UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SINGH Y.,

       Petitioner,

    v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,

       Respondents.

No. 1:25-cv-01965-TLN-AC

**ORDER**

This matter is before the Court on Petitioner Singh Y.'s ("Petitioner") Motion for a Temporary Restraining Order ("TRO").[1]  (ECF No. 5.)  On December 29, 2025, Respondents filed a response.  (ECF No. 8.)  For the reasons set forth below, for the Court GRANTS a Temporary Restraining Order as described below.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a native and citizen of India who entered the United States in April 2022. (ECF No. 8 at 1.)  Petitioner has an asylum petition pending.  (ECF No. 1 at 5.)

In December 2024, Petitioner was arrested by Fresno County Police Department.  (ECF

[1]    Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (ECF No. 1.)  Based on the substance of Petitioner's brief and the relief requested therein, the Court construed Petitioner's pleading as a motion for a temporary restraining order.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (stating that pleadings by pro se litigants must be held to less stringent standards than formal pleadings drafted by lawyers).

1

No. 8 at 2.)  Three months later, in March 2025, Petitioner was arrested by the Department of Homeland Security ("DHS") during a routine check-in and taken into immigration custody.  (ECF No. 1 at 5; ECF No. 8 at 2.)  On April 17, 2025, an immigration judge denied Petitioner a bond hearing, finding that she lacked jurisdiction to consider the matter.  (ECF No. 8-1 at 19.)  The judge also made an unexplained "danger" notation.  (*Id.*)

## II.    STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO.  *Id.* at 1134–35.

## III.    ANALYSIS

### A.  Likelihood of Success on the Merits

Petitioner claims he is being unlawfully subjected to mandatory detention without a hearing in violation of his due process rights.  (ECF No. 1.)  In response, Respondents argue Petitioner's detention is lawful as he is being detained pursuant to the mandatory detention statute, 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)"), and there is no regulatory, statutory, or constitutional requirement that Petitioner be afforded a second bond hearing.  (ECF No. 8 at 1.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872 F.3d

976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at 693–94; *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*a)  Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).

The Court finds Petitioner has a substantial liberty interest based on his release from immigration custody in April 2022.[2]  *Salcedo Aceros*, 2025 WL 2637503, at *6 ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest

---

[2] Respondents contend Petitioner does not have a liberty interest because he is subject to mandatory detention pursuant to § 1225(b)(2).  Courts nationwide have overwhelmingly rejected Respondents' argument.  See e.g., *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled DHS's July policy improper across 160 different judges sitting in about 50 different courts nationwide).  These courts examined § 1225(b)(2) and concluded it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  For the same reasons, the Court finds Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225(b)(2).

in remaining out of custody."). During that time, Petitioner enjoyed a life with his wife and his parents. (ECF No. 1 at 6.)

### b) Procedural Due Process

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz*, 53 F.4th at 1206.

As to the first *Mathews* factor – Petitioner's private interest – as discussed above, Petitioner has been out of custody. (ECF No. 1 at 5.) During those years, Petitioner established a life and relationships. (*Id.*) The length of time Petitioner has been in the United States, as well as his established relationships, create a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

As to the second *Mathews* factor – the risk of erroneous deprivation – the Court finds the risk here to be considerable. The risk of an erroneous deprivation of Petitioner's liberty interest is high where he has received minimal procedural safeguards. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, as the third factor – the Government's interest – the Court finds it is also considerable given Petitioner's serious pending criminal charges and the immigration judge's notation (despite lacking jurisdiction). *R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect, is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioner's immigration proceedings are ongoing and there is no removal order.

4

However, on or around December 29, 2024, Petitioner was arrested, and later charged, for: (1) kidnapping, (2) false imprisonment, (3) infliction of corporal injury, and (4) robbery. (ECF No. 8-1 at 2.) In April 2025, Petitioner was before an immigration judge, but the judge denied Petitioner a bond hearing for lack of jurisdiction. Therefore, Petitioner was not given a meaningful opportunity to be heard and make a showing that he is not a danger or flight risk.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner is entitled to a bond hearing to determine whether detention is warranted. Respondents did not actually provide a bond hearing when the immigration judge summarily found it did not have jurisdiction to provide such a hearing. Accordingly, Petitioner has shown he is likely to succeed on the merits of his procedural due process claim.

### B.  Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Petitioner has been detained for over nine months and has been separated from his wife and community. Even if this was not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### C.  Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in the Government's favor. First, it is clear on this record that the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Indeed, bond hearings are routine practice for

Respondents and a negligible burden, if any. Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.

In sum, these last two factors also weigh in Petitioner's favor. Therefore, the Court GRANTS Petitioner's request for injunctive relief (ECF No. 1) and issues a TRO ordering Respondents to provide a bond hearing within ten (10) days of this Order where Respondents bear the burden of demonstrating by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk.

### IV.    CONCLUSION

IT IS HEREBY ORDERED:

1.  Petitioner's motion for temporary restraining order is GRANTED;

2.  Respondents must provide a bond hearing within ten (10) days of this Order where Respondents bear the burden of demonstrating by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk. At the hearing, Petitioner shall be allowed to have counsel present. If Petitioner is not found to be a danger to society or flight risk at the hearing, Respondents must immediately release Petitioner. Respondents may impose any restrictions or conditions determined to be necessary by the neutral decisionmaker at the hearing.

3.  By February 11, 2026, Respondents must file a notice of compliance with this Court's Order and identify the outcome of the bond hearing.

4.  Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the TRO on two days' notice to Petitioner. Fed. R. Civ. P. 65(b)(4); and

5.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: January 28, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE